# Wytheville.

## CARPER v. MARSHALL.

### JULY 5, 1900.

### Absent, Riely, J.*

1. SPECIFIC PERFORMANCE—*Judgments Against Vendor—Provision for Payment.*—In a suit to enforce a vendor's lien, it is not error to direct a sale, and provide that judgments against the vendor, amounting to only a small proportion of the amount due him, shall be paid out of the cash payment at the sale, although the contract for the sale stipulated that the purchase money notes should not be assigned until said judgments had been satisfied. The provisions for paying the judgments amply protect the vendee.

2. VENDOR AND VENDEE—*Vendor's Lien—Change in Evidence of Debt—Case in Judgment—Findings in Trial Court—Appeal and Error.*—A vendor of land who retains a lien for the purchase price may surrender to the vendee his bond for such purchase price, and accept the bond of another for the amount, and at the same time retain the benefit of his lien, if the parties plainly so agree. The transaction is not illegal, and in this case the rights of third persons do not intervene. In the case in judgment, the commissioner who examined the witnesses, and the trial court, found that such an agreement had been proved, and the evidence in the cause does not warrant this court in reversing that finding.

3. ASSIGNMENTS—*Duty of Assignee—Diligence—Loss—Collaterals.*—It is the duty of the assignee of a bond to use due diligence to make the money out of those primarily bound for its payment, and, if it is secured by a specific lien, to use like diligence to enforce such lien before he can have recourse on the assignor. If he fails to pursue this course, it is incumbent upon him to show clearly that no loss or damage has resulted from his lack of diligence. If a collateral be lost through the supineness of the creditor, he must account for the loss to his own debtor.

*Judge Riely was prevented by sickness from attending this term.

Appeal from two decrees of the Circuit Court of Craig county, pronounced May 5, 1897, and May 5, 1898, respectively, in a suit in chancery, wherein the appellee was the complainant, and the appellant was the defendant.

*Reversed.*

The opinion states the case.

*Benjamin Haden,* for the appellant.

*Paris V. Jones, Marshall & Marshall,* and *S. W. Williams,* for the appellee.

KEITH, P., delivered the opinion of the court.

The bill in this case was filed by Marshall to recover the balance of the purchase money due upon a tract of land sold by him to Carper in 1890. The purchase price was $7,000, of which sum Carper paid in cash $2,333.33, and for the residue executed his two notes, payable on the 1st of March and September, 1891. Carper had a short time before this sold a tract of land to J. H. Hoge and A. B. Humphreys, receiving for it $3,000 in cash, and two notes of $2,500 each, the first falling due on the 1st of March, 1891, and the other September 1, 1891, with interest from date. When the bond for $2,500 fell due, Carper placed it in the hands of Marshall, a practicing lawyer, to collect, and out of the proceeds Marshall was to pay Carper's note to him falling due on the 1st of March. Before this note became due, Humphreys and Hoge conveyed the tract they had purchased to the West Salem Land Company. Marshall, as attorney for Carper, brought a chancery suit to March rules, 1891, against Humphreys and Hoge to enforce the vendor's lien reserved by Carper, but did not make the West Salem Land Company a party. The West Salem Land Company desired to have this suit dismissed, and, with that end in view, through its vice-president, entered into a negotiation with Carper and Marshall,

which resulted in its paying to Carper a sum upon the $2,500 bond which reduced it to $2,333.33, and thereupon Marshall delivered Carper's bond to him falling due March 1, 1891, the first deferred payment upon the land sold by Marshall to Carper, and Carper transferred to Marshall the amount remaining due on the bond of Humphreys and Hoge falling due upon the same date. The suit brought to enforce this bond was thereupon dismissed.

Marshall in his bill avers that when he delivered Carper's bond to him, it was with the express understanding that the lien reserved to secure the balance due from Carper, as well upon the first as upon the second bond, was to remain unimpaired by that transaction. He sets out in full all the credits to which, as he claims, Carper is entitled, and prays that the lien which he reserved for the land sold by him to Carper may be enforced for his benefit, and an account be stated by a commissioner to ascertain the balance due to him.

Carper answered this bill. His principal contention is that the transaction between himself and Marshall by which he transferred to Marshall the bond of Hoge and Humphreys, amounting originally to $2,500, and Marshall delivered to him his bond for $2,333, which he had given for the first deferred payment on the land purchased of Marshall, was a satisfaction and extinguishment of the bond, the debt evidenced by it, and of all liens by which it was secured. He avers that the indulgence extended in the collection of the bond transferred by him to Marshall was given by Marshall, and that it would be unjust to visit upon him any loss resulting from it as it was without his knowledge or direction.

An order was entered directing a commissioner to state an account between the parties. He returned a report, from which it appears that there is due from Carper to Marshall, secured by a vendor's lien, the sum of $2,211.23. To this report exceptions

were filed by Carper, which were overruled, and a decree entered from which this appeal is taken.

The first error assigned is that, by the terms of the contract of sale between Carper and Marshall, the last purchase money note of $2,333.33 was not to be assigned by Marshall until certain judgment liens against him binding the first purchase by Carper had been satisfied.

We think there is no merit in this contention. The decree complained of provides that out of the cash payment received on the sale of the land the commissioners shall first pay and discharge the costs of suit and expenses of sale; and, secondly, such judgment liens against James W. Marshall as bound the land at the time it was aliened by him to Carper, and which remained unpaid at the day of sale. As the sum ascertained to be due from Carper to Marshall is largely in excess of the sum represented by the judgments against Marshall, Carper is amply protected.

The second assignment of error proceeds upon the idea that, when Marshall surrendered to Carper the first bond for $2,333.33, due upon his sale of land to Carper, and received from him the $2,500 bond due by Humphreys and Hoge, Carper's bond, and the lien securing it, were extinguished. That such is the usual effect of a transaction which results in placing a bond in the hands of the obligor is true, but Marshall avers that in this case he expressly declined to extinguish the debt from Carper to him, or the lien by which it was secured. He sets up in his bill a somewhat unusual transaction, but, while unusual, it is not on that account less binding if established by proof. There was nothing illegal or contrary to public policy in making a bargain such as he describes. The rights of third parties do not intervene. It was a transaction wholly between Carper and himself, and, if established by proof, there is no reason why it should not be enforced. Marshall was examined as a witness in his own behalf. He testified explicitly, directly,

and frankly in support of the statement which he makes in his bill, while the evidence of Carper upon the same subject is negative in its character. The commissioner, to whom the matter was referred, and who heard the witnesses, found in favor of the appellee, if not in direct terms, by necessary implication. This finding was approved by the Circuit Court, and we do not feel that the evidence warrants us in reaching a different conclusion.

The third assignment of error involves a consideration of Marshall's duty with respect to the bond of Humphreys and Hoge transferred to him by Carper, as before stated. That bond constituted a lien upon the land sold by Carper to Humphreys and Hoge. It was the first purchase money bond, and Marshall was entitled to exhaust all the security for its payment as between himself and Carper. In addition to the lien securing its payment, Marshall could look to both of the obligors and to Humphreys, who signed it as guarantor. By accepting it of Carper he assumed control and dominion over it, and it became his duty to exercise due diligence to make it out of those primarily bound for its payment.

A bond which is transferred as collateral security is put under the dominion of the creditor to make his claim out of it. His duties in respect to it are active. He is to employ reasonable diligence in collecting the money on the security, and applying it to the principal debt. *Muirhead* v. *Kirkpatrick*, 21 Penn. St. 237. He alone is empowered to receive the money to be paid upon it, and to control it, in order to protect his right under the assignment. Where the collateral is lost by the insolvency of the debtor in the collateral instrument, through the supine negligence of the creditor, he must account for the loss to his own debtor. *Hanna* v. *Holton*, 78 Penn. St. 334.

Carper having parted with all his right of control over the bond which he transferred, Marshall was bound to employ reasonable diligence in its collection. Colbrooke on Collateral

Securities (2d ed.), sec. 114; Leading Cases in Equity, 2d Pt., at p. 312; *Williams* v. *Price*, 1 Simons & Stuart, at p. 587.

The doctrine is fully stated in *Wilson* v. *Barclay*, 22 Gratt., at page 541, by Judge Staples, as follows: "It is clear, as a general rule, the assignee must sue the maker or obligor before he can resort to the assignor. This rule is varied where it is perfectly manifest a suit would be wholly unavailing. It is equally clear that, where the debt which has been assigned is secured by a specific lien, it is the duty of the assignee diligently to enforce such lien before he can have any recourse against the assignor. If he fails to pursue this course, it is incumbent upon him clearly to show that the security was worthless, and that no loss or damage has resulted from his lack of diligence."

It appears that this bond was assigned by Carper to Marshall April, 1891. Suit was not instituted upon it until the latter part of October of that year, a term of the Circuit Court having intervened, and judgment was not obtained upon it until October, 1893. Carper testified that if suit had been brought promptly on that bond, the whole of it could have been made out of the obligors. It may be that no loss was sustained, and that no injury was occasioned by this delay. It may be that the obligors had no other property than that which was subjected in the proceedings instituted against them, but these facts do not appear in this record, and we are of opinion that a decree should not go against Carper, the assignor or transferrer of the bond to Marshall, until an inquiry has been made upon this subject.

Upon the whole case, we are opinion that the assignment from Carper to Marshall was received by the latter, not as a payment, but as a means of payment, and that there was no error in the appropriation of payments made by the Circuit Court, except in so far as it may be affected by the result of an inquiry to ascertain whether any loss was sustained by Carper by reason of

Marshall's failure to use due diligence to collect the debt assigned to him.

The decree complained of must be reversed, and the cause remanded to the Circuit Court, with instructions to direct the commissioner to inquire and report what loss, if any, Carper sustained by reason of Marshall's failure to proceed promptly against those liable upon the bond assigned to him. Any loss which Carper may have sustained by reason of Marshall's dealing with this collateral is to be set off against the bond of $2,333.33, due March 1, 1891, and as to any balance due Marshall, the payments are to be applied as in the reports heretofore made in this cause.

*Reversed.*